IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Timothy A. Ellestad, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 03:05-cv-89 |
| Jo Anne Barnhart, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Before the court are Timothy A. Ellestad's (hereinafter "Ellestad," "plaintiff," or "claimant") Motion for Summary Judgment (Doc. #8) and the Commissioner of Social Security's ("Commissioner") Motion for Summary Judgment (Doc. #11). For the reasons articulated in this memorandum, the court recommends that plaintiff's motion (Doc. #8) be **GRANTED** and the Commissioner's final decision be remanded to the Administrative Law Judge for further findings.

*Background*

Ellestad initiated this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final decision, which denied his application for disability insurance benefits ("DIB"). Ellestad filed his application for benefits with a protective filing date of July 31, 2002. (Transcript (hereinafter "Tr.") at 50-52)). In his application, Ellestad alleges he became disabled on July 24, 2002 due to osteoarthritis, loss of sensitivity of nerves in his fingers, and compressed cervical vertebrae (Tr. at 61).

Ellestad was 47 years old at the time of the hearing. (Tr. at 18). He has a high school

1

education. (Tr. at 18). He has worked in the past as a heavy equipment operator, truck driver, and extruder operator. (Tr. at 62). Following an administrative hearing, the Administrative Law Judge (ALJ) held Ellestad was not disabled within the meaning of the Act. (Tr. at 17-24). The Appeals Council denied review, and ALJ's decision became the final decision of the Commissioner. (Tr. at 7-10). Ellestad seeks judicial review of the Commissioner's decision in this action.

## *Discussion*

The ALJ found Ellestad has the following "severe" impairments: osteoarthritis and degenerative disk disease; however, these impairments do not meet or equal the requirements set forth in the Listing of Impairments. (Tr. at 19). He concluded Ellestad's allegations regarding his pain and other symptoms were not fully credible. (Tr. at 23). The ALJ found that Ellestad retains the residual functional capacity (RFC) to perform the physical exertional requirements for light work, with a sit/stand option. (Tr. at 22-23). The ALJ found Ellestad could not return to his past relevant work, but he could work as an assembler or information clerk. (Tr. at 24).

Ellestad asserts that the ALJ's finding that he had the RFC to perform light work is not supported by substantial evidence in the record as a whole. He also argues that the ALJ's decision was improper because the ALJ "did not explain his failure to consider the final limitations posed in his hypothetical." (Memorandum in Support of Plaintiff's Motion for Summary Judgment, at 5).

Before discussing the alleged errors raised by plaintiff, the court notes the deferential standard of review applied to these cases. The court must affirm the Commissioner's decision if substantial evidence appearing in the record as a whole supports the decision. Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). The Commissioner's decision is not subject to reversal

simply because the reviewing court would have reached a different conclusion or because substantial evidence also exists which would support a contrary outcome. Sultan v. Barnhardt, 368 F. 3d 857, 863 (8th Cir. 2004). If after review the court is capable of drawing two inconsistent positions and one of those positions represents the Commissioner's findings, the decision must be affirmed. Dixon v. Barnhardt, 353 F.3d 602, 605 (8th Cir. 2003).

Ellestad first asserts that the ALJ erred in determining he has the RFC to perform light work with a sit/stand option. Ellestad alleges he suffers from pain, stiffness, and weakness throughout his body. (Tr. at 200-05). When evaluating a disability claim based on pain and/or fatigue, an ALJ must consider the claimant's subjective complaints under the standard set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[1]

The ALJ noted that Ellestad's daily activities include caring for several dogs, performing the household chores, cooking, shopping, and watching television. (Tr. at 201-05). Although minimal activities themselves do not constitute substantial evidence that claimant can engage in substantial gainful activity, Harris v. Secretary of Dep't of Health and Human Services, 959 F.2d 723, 726 (8th Cir. 1992), they can be considered in assessing the credibility of the claimant's subjective complaints. Clark v. Shalala, 28 F.3d 828, 831 (8th Cir. 1994). The ALJ concluded that "claimant's daily activities have not been materially affected." (Tr. at 20). However, "the ability to do activities such as light housework and visiting with friends provides little or no

---

[1]The ALJ must consider all evidence of plaintiff's subjective complaints, including prior work history, as it relates to:

> (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional limitations.

Polaski, 739 F.2d at 1322.

support for the finding that a claimant can perform full-time competitive work . " See Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995).  Ellestad testified that he was once an "avid fisherman" but no longer fishes due to pain.  (Tr. at 204).  He also can no longer cut cords of wood with a chainsaw.  (Tr. at 204).  He stated he does not attend any religious services, is not active in groups, or clubs, and does no volunteer work.  (Tr. at 203-04).  There is no indication of whether the lack of activities is a result of pain or a matter of choice.  He is only able to walk 50-75 yards before resting.  (Tr. at 202).  He testified that he takes quite a few naps during the day, lasting between ½ to 1 hour.  (Tr. at 203).  He also takes hot whirlpool baths for between 1-2 hours to help deal with pain.  (Tr. at 202).  During his testimony, the ALJ noted Ellestad was squirming around, and claimant stated he was experiencing pain in his neck and hip.  (Tr. at 205).  Thus, the record demonstrates that Ellestad's daily activities have been materially affected by his pain and other limitations.

As for medical evidence, the ALJ noted that "there is no evidence of any physician-imposed restriction against all work."  (Tr. at 21).  The records do reflect that two physicians suggested a referral to a rheumatologist for further testing (Tr. at 154-56; 172-73).  Such referral has apparently not been done, could possibly better establish Ellestad's limitations.  The second physician, Dr. Michael Torkleson, recommended that plaintiff have pain management and orthopedic surgery consultations as well.  Dr. Torkelson also stated:

> After evaluating Mr. Ellestad and reviewing his chart I believe that he is disabled from driving a truck and could be considered not to pass his next CDL exam. Incidentally, his blood pressure management complicated by pain could be another CDL exam problem.  Certainly standing work on a hard floor and heavy lifting further aggravates his reported symptoms.

(Tr. at 172).  The radiology report of Ellestad's CT scan stated:

> 1. Significant degenerative changes with extensive osteophyte formation

posteriorly and along the facets which result in significant AP diameter narrowing of the spinal canal at the C4-C7 levels. Marked foraminal narrowing present at the C4-5 on the right side, C5-6 levels bilaterally and C6-7 on the left side, cannot exclude nerve root compression at these levels.

2. A posterior disk bulge may be present at the C4-5 level

3. Suggest correlation with MRI scan.

(Tr. at 174-75). The court notes Ellestad did not seek help at a pain clinic as suggested, which could help manage his symptoms. He also did not enter a physical therapy program, but he stated he could not afford to do so. (Tr. at 207).

A Disability Determination Services doctor opined that claimant retained the RFC to perform his past relevant work as a truck driver. (Tr. At 162). The DDS opinion, limiting Ellestad to lifting 50 pounds occasionally and 25 pounds frequently, essentially places him in the medium work category. See 20 CFR § 404.1567. The ALJ disagreed with the DDS determination and found Ellestad retained the RFC to perform light work with a sit/stand option. (Tr. at 21). The ALJ stated that "[t]his conclusion is based on claimant's admitted level of activities of daily living and the objective medical evidence." (Tr. at 21).

The ALJ explained:

> The residual functional capacity (RFC) determined in this case differs from the State agency's RFC determined at an earlier stage of the claim for several reasons. The State examiners did not have the opportunity to hear and observe the testimony of the claimant at the hearing, nor did they have the opportunity to examine the claimant as other medical sources have done since the State agency's last review.

(Tr. at 21). As this statement reflects, the ALJ concluded that Ellestad's allegations of pain and resulting limitations prevented him from working at the medium level. The ALJ concluded that claimant could "perform a significant range of light work." (Tr. at 24). The court is unable to determine how the ALJ reached this decision. The ALJ apparently found Ellestad's testimony

describing his limited abilities credible, at least to some degree. However, the ALJ does not indicate what he found credible, and what he did not. The ALJ states that "claimant's subjective complaints are considered credible only to the extent that they are supported by the evidence of record as summarized in the text of the decision," and he found Ellestad's allegations regarding his limitations "not totally credible for the reasons set forth in the body of this decision" (Tr. at 20, 23). The undersigned could not locate such discussion or such supporting text. The ALJ does not explain or clarify which portions of Ellestad's testimony he found credible. The failure to conduct a thorough credibility analysis warrants reversal of the Commissioner's decision and remand to the ALJ for further findings. The court will "not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain" and those reasons are supported by substantial evidence on the record as a whole. Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993); see also Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999). Beyond a listing of Ellestad's daily activities, the opinion is devoid of the necessary Polaski analysis. Thus, the court recommends a finding that the ALJ failed to undertake the Polaski analysis.

Although the above finding is sufficient to remand this case, the court will also address Ellestad's second alleged error. Plaintiff argues that the ALJ incorrectly interpreted the vocational expert's opinion. However, the court's concern arises from how the ALJ formed his hypothetical question and what portion of those answers he relied upon. James Berglie, the vocational expert testified to the following hypothetical posed by the ALJ:

> [ALJ]: If we hypothetically picked a man 46 to 47-years of age with education and work experience like the claimant has. And if we were limited as DDS has lifting 50 pounds occasionally and 25 pounds frequently and if that's his only limitations, would there be – could he do his past relevant work?

6

[VE]: He could.  All of the past work as it's normally performed in the national economy would fall within those limits.

[ALJ]:  If in addition to those limitations our hypothetical person had to be free to alternate sitting and standing, would that impact his past relevant work?

[VE]: That would impact and that would rule out all the past work.  Those are jobs that don't allow a lot of discretion about being able to stand or sit.

[ALJ]: Would he have acquired skills that would transfer to a job that would accommodate those limitations?

[VE]:  No.

[ALJ]: Would there, there be, there be unskilled work though?

[VE]: There'd be a lot of unskilled work.  There'd be a number of jobs, in the sedentary, light and, to a limited extent to even in the medium range that could be performed.  Just by way of example there'd be a number of factory jobs like assembler or packager or part sorter or a variety of attendant jobs, like a parking attendant or gate attendant.  There are unskilled clerking jobs like information clerk.  Again, all these are unskilled, all would allow opportunities to sit or stand throughout the day.  The very common jobs nationally found in hundreds of thousands and in this region . . . .

[ALJ]: If in addition to those limitations our hypothetical person – if he couldn't consistently keep a schedule set by others.  That is he'd have to take additional breaks, unscheduled breaks or in some cases leave the worksite or call frequently with the absences, could he do any of those jobs competitively?

[VE]: No.  These jobs require adhering to a schedule set by the employer and would only allow normal breaks, for example, a break in the morning of 15 minutes, a lunch hour, another break in the afternoon.  They would only allow no more than a couple of absences per month on any ongoing basis.  And so if there was – if he would miss more work then [sic] that or have to be away from the worksite more then [sic] that, it would not be tolerated on these jobs or really any other jobs that I would be able to identify.

(Tr. at 211-213).

The first portion of the hypothetical lists the lifting requirements for medium work, which the ALJ found Ellestad was incapable of performing.  The additional limitations, regarding sitting and standing, appear to relate back to the medium work requirements.  The ALJ

7

based his conclusions on the vocational expert's testimony regarding unskilled light to sedentary work. The ALJ apparently does not rely on the hypothetical individual who cannot work full days. "A hypothetical question . . . need only include impairments that are supported by the record and which the ALJ accepts as valid." McKinney v. Apfel, 228 F.3d 860, 865 (8th Cir. 2000). However, here the court is unable to determine what impairments the ALJ accepted as valid. The ALJ apparently concluded that Ellestad could work full days, but not at the exertion level he described in his first hypothetical. The court is unable to determine which portion of the hypothetical the ALJ ultimately relied on and for what reasons.

## *Conclusion*

Based on the foregoing, the undersigned recommends this action be remanded to the agency for consideration of plaintiff's complaints of pain in accordance with Polaski and more detailed findings.

Therefore, **IT IS RECOMMENDED:**

1. Plaintiff's Motion for Summary Judgment be **GRANTED** (Doc. #8 ), and the case be remanded to the agency for further consideration in accordance with this opinion.
2. Defendant's Motion for Summary Judgment (Doc. #11) be **DENIED**.

Pursuant to Local Rule 72.1(E)(4), any party may object to this recommendation within ten (10) days after being served with a copy.

Dated this 11th day of September, 2006.

Karen K. Klein
United States Magistrate Judge